IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DESMOND THORNTON, | ) |
| | ) |
| Plaintiff, | ) |
| | ) 2:09-cv-0246 |
| vs. | ) |
| | ) |
| PAUL ABEL, individually and | ) |
| in his official capacity as a police | ) |
| officer for the City of Pittsburgh, | ) |
| and the CITY OF PITTSBURGH, | ) |
| | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM OPINION AND ORDER OF COURT**

July 14th, 2011

      Presently pending before the Court is the MOTION FOR SUMMARY JUDGMENT, with brief in support, filed by defendants Paul Abel ("Abel") and the City of Pittsburgh (collectively "Defendants") (Document Nos. 52 and 55, respectively); the BRIEF IN OPPOSITION to Defendants' Motion for Summary Judgment filed by Desmond Thornton ("Plaintiff") (Document No. 56); and the REPLY BRIEF filed by Defendants (Document No. 67). The issues have been fully briefed and the factual record has also been thoroughly developed via Defendants' CONCISE STATEMENT OF MATERIAL FACTS IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT (Document No. 53), Defendants' APPENDIX IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT (Document No. 52), Plaintiff's RESPONSIVE CONCISE STATEMENT OF MATERIAL FACTS (Document No. 57), and Plaintiff's APPENDIX IN OPPOSITION TO DEFENDANTS'

1

MOTION FOR SUMMARY JUDGMENT (Document No. 58).  Accordingly, the motion is ripe for disposition.

After careful consideration of Defendants' motion, the filings in support and opposition thereto, the memoranda of the parties, the relevant case law, and the record as a whole, the Court finds that there is not sufficient record evidence upon which a reasonable jury could return a verdict for Plaintiff, Desmond Thornton, on his federal claims of alleged violations of the Fourth Amendment, and *Monell* claims for failure to train, discipline and supervise.  The Court will also dismiss without prejudice Plaintiff's pendent state claims of assault and battery, as well as Abel's state counterclaims of assault and battery.

### PROCEDURAL HISTORY

Plaintiff's claims, and Abel's counterclaims, arise from an altercation between Plaintiff and Abel that took place in the Allegheny County Courthouse (the "Courthouse") on March 7, 2007, while Abel waited outside a courtroom wherein his wife was testifying in an unrelated case.  Plaintiff, who eventually faced criminal charges as a result of the incident, alleges that Abel used excessive force while attempting to subdue and arrest him after a dispute broke out between the two.

On March 2, 2009, Plaintiff initiated this civil rights law suit pursuant to 42 U.S.C. § 1983, by filing a pro se Complaint that alleged violations of his constitutional rights and pendent state law claims for assault and battery against the following: Paul Abel, individually and in his capacity as a City of Pittsburgh police officer; the City of Pittsburgh Police Chief; the City of Pittsburgh (the "City"); Lori Dobrosielski, individually and in her capacity as an officer of the

Allegheny County Sheriff's Office ("Dobrosielski"); the Allegheny County Sheriff's Office; and Allegheny County. On May 18, 2009, Plaintiff filed a pro se Amended Complaint, reasserting his original claims and adding Renee Kacsuta, individually and in her capacity as a Pittsburgh Police officer, as a defendant. On October 9, 2009, Allegheny County filed a Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b) (Document No. 9). During the pendency of that motion, Plaintiff obtained counsel and was granted leave to file a Second Amended Complaint, which was filed on December 10, 2009, and named only Abel and the City as defendants. Subsequently, Allegheny County's Motion to Dismiss was terminated, as were the claims against the remaining defendants. As a result, the only claims that remain are a Fourth Amendment excessive force claim against Abel, a *Monell* claim against the City for its alleged failure to appropriately train, discipline and supervise its police officers with regard to the use of excessive force, the pendent state law claims against Abel in his individual capacity, and Abel's state law counterclaims.

After extensive discovery, Defendants filed the instant Motion for Summary Judgment, in which they raise several contentions. First, Defendants argue that Abel is entitled to summary judgment because the summary judgment record evidence does not support a finding that Abel was acting under color of state law. Second, they argue that even if the Court finds that Abel was acting under color of state law, summary judgment should nonetheless be granted because the amount of force used was reasonable, or, alternatively, that Abel is entitled to qualified immunity. Finally, Defendants contend that Plaintiff has failed to show that his alleged injuries were sustained as a result of a custom, policy, or practice of the City, as is required for municipal liability to attach under § 1983.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be granted if, drawing all inferences in favor of the non-moving party, "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986) (internal quotation marks omitted).

The mere existence of some factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Id*. at 247-48. A dispute over those facts that might affect the outcome of the suit under the governing substantive law, i.e., the material facts, however, will preclude summary judgment. *Id*. at 248. Similarly, summary judgment is improper so long as the dispute over the material facts is genuine. In determining whether the dispute is genuine, the court's function is not to weigh the evidence but rather to determine whether the evidence of record is such that a reasonable jury could return a verdict for the nonmoving party. *Id*. It is on this standard that the Court has reviewed the motion and responses filed by the parties.

## FACTUAL BACKGROUND[1]

As the law requires, all disputed facts and inferences are to be resolved most favorable to the Plaintiff, the non-moving party. Plaintiff alleges that his Fourth Amendment right to

---

[1] These facts are taken from the Concise Statement of Material Facts filed by Defendants (Document No. 53), which contains numbered paragraphs and citations to the record in accordance with Local Rule 56.1(B)(1) and the Responsive Statement of Material Facts filed by Plaintiff (Document No. 57), which also contains numbered paragraphs and citations to the record.

protection against excessive force in the course of an arrest was violated when Abel, allegedly in an effort to subdue and arrest him, grabbed his wrist, pushed him backwards, and punched him several times during a scrum in the halls of the Allegheny County Courthouse.

Several of the facts surrounding the altercation between Plaintiff and Abel, as well as a number of non-material issues of fact, are disputed. However, it is clear from the summary judgment record evidence that there is nothing in the record from which a reasonable fact finder could conclude that Abel was acting under color of state law at the time the incident occurred.

A. <u>The Events of March 7, 2007</u>

Abel has been employed by the City of Pittsburgh as a police officer for more than ten (10) years. Defs' Concise Stmt of Material Facts, at ¶ 1 (Document No. 53). On March 7, 2007, he was present in the Courthouse, dressed in his police uniform, to appear as a witness in three unrelated criminal cases. *Id.* at ¶ 3; Trans. of Testimony of Paul Abel at *Commonwealth of Pennsylvania v. Muhamid Thornton,* Feb. 4-5, 2008 (Document No. 54-1 at 25). Abel's wife had been subpoenaed to the Courthouse that same day to testify in a criminal case in which she was the victim. Defs' Concise Stmt of Material Facts, at ¶ 4. The defendant in that case was Tosha Holt ("Holt"), who is the stepsister of both Abel's wife and the instant Plaintiff, Thornton. Thornton Dep. at 31 (Document No. 54-2 at 7). Plaintiff was also present in the Courthouse that day, as he was scheduled to testify for either the Commonwealth or the defendant in the criminal trial of Holt.[2] Defs' Concise Stmt of Material Facts, at ¶ 8.

---

[2] Defendants state that Plaintiff was called to testify as a defense witness. Defs' Concise Stmt of Material Facts, at ¶ 8. Furthermore, they state that there was an order in place, which prohibited defense witnesses from contacting Abel's wife and her immediate family. *Id.* Plaintiff, however, counters that he was subpoenaed by both the Commonwealth and the defense and that he was unaware of the existence of the judge's verbal directive. Plaintiff's Responsive Concise Stmt of Material Facts, at ¶ 8.

After signing in with the Court Clerk and receiving a time card for the criminal cases for which he had been subpoenaed, Abel was seated on a bench in the hallway outside of the courtroom in which his wife was testifying. *Id.* at ¶¶ 6-7. Seated alongside him were his two stepdaughters and infant son, whom he had brought to the Courthouse because it was a no school snow day. *Id.* at ¶¶ 5, 7. Abel's wife had already entered the courtroom to testify when Plaintiff approached Abel and his children. *Id.* at ¶ 9. Soon thereafter Plaintiff began to speak to Abel's oldest stepdaughter, at which point Abel told Plaintiff that he was not permitted to talk to members of Abel's wife's family because of the existing protective order and that he should leave. *Id.*

The parties dispute what happened next. According to Abel, Plaintiff responded, "[F]---that, you can't tell me what to do."[3] *Id.* at ¶ 10. Plaintiff proceeded to put his left hand on the cheek of Abel's stepdaughter, at which point Abel took hold of Plaintiff's left wrist. *Id.* at ¶¶ 10-11. Plaintiff responded by stating, "you can't f---ing touch me," *id.* at ¶ 11, and began to punch the left side of Abel's face with his right hand, landing three to five punches. *Id.* at ¶ 12. Abel then got off the bench, and Plaintiff charged at him. *Id.* However, Abel placed Plaintiff in a headlock, and the two men fell to the ground with Plaintiff landing on top of Abel. *Id.* At this time, sheriff deputies and police officers intervened. *Id.* at ¶ 13. Abel escaped from under Plaintiff, gathered his children and walked down the hallway, while Plaintiff continued to struggle with deputy sheriffs, who were attempting to take him into custody. *Id.* at ¶ 14.

---

[3] Similarly, witnesses at Plaintiff's criminal trial testified to hearing Plaintiff reply, "I don't have to listen to you. These are my neices. F--- you. I don't have to listen to you," Defs' Concise Stmt of Material Facts, at ¶ 17, and "you can't tell me what to do. I can do whatever I want." *Id.* at ¶ 22.

Plaintiff, on the other hand, contends that Abel told him to walk away after he touched the girl's cheek. Trans. of Plaintiff's Testimony at *Commonwealth of Pennsylvania v. Muhamid Thornton*, Feb. 4-5, 2008 (Document No. 60 at 8). When Plaintiff did not immediately remove his hand from the girl's cheek, Abel grabbed his wrist and "squeezed it a little bit." *Id.* Plaintiff admitted that he "smacked [Abel's] hand away" and said "don't you ever put your hands on me." *Id.* However, contrary to Defendants' account, Plaintiff states that "[a]t that time [Abel] proceeded to jump up – as soon as I pushed his hand away, he jumped up and grabbed me." *Id.* According to Plaintiff, he and Abel tussled back and forth and eventually fell to the ground. *Id.* Abel repeatedly punched Plaintiff in the face while the two were on the ground. *Id.* at 9.

Finally, Plaintiff was pulled away from the scrum and handcuffed by Deputy Sheriff Dobrosielski, who escorted Plaintiff to a holding cell. Defs' Concise Stmt of Material Facts, at ¶ 26-27. Subsequently, Plaintiff admitted to hitting Abel, and it was explained to him that he was under arrest and would be searched.[4] *Id.* at ¶¶ 29-30. The parties do not dispute that it was Deputy Dobrosielski who decided to make the arrest. *Id.* at ¶ 35.

B.  Plaintiff's Criminal Trial on February 4-5, 2008

Although Plaintiff, through his attorney, argued at the preliminary hearing held on March 29, 2007, that any assault charge should be limited to simple assault because Abel was not acting in his official capacity as a police officer when the incident took place, Plaintiff was charged with aggravated assault. *Id.* at ¶¶ 31, 33. At trial, he again argued that Abel was merely babysitting his children at the time of the altercation, and thus, there was no basis for finding him

---

[4] Plaintiff contends that he struck Abel in self-defense. Plaintiff's Responsive Concise Stmt of Material Facts, at ¶ 29. Similarly, Deputy Dobrosielski's testimony at Plaintiff's criminal trial reflects that in addition to admitting to hitting Abel, Plaintiff also stated that he did so only after Abel had touched him first. Trans. of Testimony of Deputy Lori Dobrosielski at *Commonwealth of Pennsylvania v. Muhamid Thornton*, Feb. 4-5, 2008 (Document No. 54-1 at 31).

guilty of aggravated assault of a police officer. *Id.* at 33. Ultimately, the jury found Plaintiff guilty of one count of disorderly conduct, for which he received a sentence of time served. *Id.* at 37.

## DISCUSSION

Both Abel and the City have moved for summary judgment. Abel argues that the summary judgment record is devoid of any evidence to establish that Abel's actions on March 7, 2007, were undertaken under color of state law. Thus, according to Defendants, there is no basis for liability under § 1983. Alternatively, Defendants contend that even if the Court should find that Abel was acting under color of state law, the amount of force used was reasonable, and Abel is entitled to qualified immunity. Accordingly, because Plaintiff is unable to establish any § 1983 liability against Abel, Defendants argue that the City is entitled to summary judgment with respect to the *Monell* claim against it.

A.  Claims Against Abel

Section 1983 of Title 42 of the United States Code does not create substantive rights, but rather provides a remedy for the violation of rights created by federal law. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985). As in any § 1983 case, the Court must proceed to "identify the exact contours of the underlying right said to have been violated." *County of Sacramento v. Lewis*, 523 U.S. 833, 842, n. 5 (1998).

A *prima facie* case under § 1983 requires a plaintiff to demonstrate: (1) that the alleged wrongful conduct was committed by a person acting under color of state law; and (2) that the conduct deprived the plaintiff of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Nicini v. Morra*, 212 F.3d 798, 806 (3d Cir. 2000). The threshold

8

issue in this case focuses on the first prong of the *prima facie* case, i.e. whether Abel was acting under color of state law when the alleged violation of Plaintiff's Fourth Amendment rights occurred. If the Court determines that he was not acting under color of state law, then it need not proceed to the second prong of the analysis, as both elements must be simultaneously present to sustain a § 1983 claim.

The United States Supreme Court has made clear that the first prong of the *prima facie* case is not satisfied unless the defendant has "exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *West v. Atkins*, 487 U.S. 42, 49 (1988) (internal citations omitted); *See Lugar v. Edmonson Oil Co.*, 457 U.S. 922, 937 (1982) (in order to satisfy the first prong and move forward with a § 1983 action, the alleged violation of federal rights must be "fairly attributable to the state"). As a result, public employees who act in their official capacities or exercise their responsibilities pursuant to state law have generally been found to have acted under color of state law. *West*, 487 U.S. at 50. Such has been the case even when a defendant in a § 1983 suit has abused the position given to him by the state. *Id.* at 50 (citing *Monroe v. Pape*, 365 U.S. 167, 172 (1961)).

Furthermore, because it is well established that "under 'color' of law means under 'pretense' of law," *Screws v. United States*, 325 U.S. 91, 111 (1945), "off-duty police officers who purport to exercise official authority will generally be found to have acted under color of state law." *Barna v. City of Perth Amboy*, 42 F.3d 809, 816 (3d Cir. 1994). The United States Court of Appeals for the Third Circuit has instructed that such purported authority can be manifested by, for example, "flashing a badge, identifying oneself as a police officer, placing an individual under arrest, or intervening in a dispute involving others pursuant to a duty imposed

by police department regulations." *Id.* (internal citations omitted). However, "a police officer's purely private acts which are not furthered by any actual or purported state authority are not acts under color of state law." *Id.* at 816 (citing *Delcambre v. Delcambre*, 635 F.2d 407, 408 (5th Cir. 1981); *D.T. v. Independent School Dist. No. 16*, 894 F.2d 1176 (10th Cir. 1990), *cert. denied,* 498 U.S. 879 (1990)).

In *Barna*, two off-duty, ununiformed police officers assaulted the plaintiff, who was the brother-in-law of one of the officers, following a dispute outside of the plaintiff's home.[5] *Id.* at 813. Our appellate court explained that the officer's police-issue nightstick, which was used in the attack, "was an objective indicia of police authority," as the officer was "legally entitled to possess it only because of his position as a police officer." *Id.* at 818. Nonetheless, it concluded that the evidence was insufficient to support a finding that the officers were acting with either actual or purported police authority at the time of the assault. *Id.* at 817.

While acknowledging that "the fact that [the officers] were off duty is not dispositive of whether [they] were exercising official police authority," the Court of Appeals in *Barna* found that there was nothing in the record to indicate that the officers were on official police business when the incident occurred. *Id.* Rather, "the assault arose out of the officer's familial and personal concerns." *Id.* at 818. As the Court of Appeals noted, the dispute began when one of the officers was asked to follow the plaintiff to his home at the request of a relative and escalated only because the officer accused the plaintiff of hitting his sister. *Id.* at 817. With respect to the issue of whether the officers acted under purported legal authority, the appellate court reasoned

---

[5] The dispute began when one of the police officers believed that the plaintiff had hit the officer's sister. *Barna*, 42 F.3d at 813. As a result, the officers began yelling at the plaintiff, who responded, "'Look, you guys are out of your jurisdiction. Just get out of here, go home, this is none of your concern.'" *Id.* One of the officers replied, "Jurisdiction? I'll show you jurisdiction." *Id.* Subsequently, the officers attacked the plaintiff, and at one point, one of them used his police-issue nightstick "to place [the plaintiff] in a chokehold." *Id.*

that because the officers did not identify themselves as police officers, indicate they were acting on police business, attempt to arrest the plaintiff, or "otherwise invoke their police authority," there was no basis for finding that they had purported to act with state authority. *Id.* at 818.

The summary judgment record evidence before this Court is similarly devoid of any basis upon which a reasonable fact finder could conclude that Abel was either actually or purportedly acting under color of state law when the alleged assault of Plaintiff took place. Although Abel was in uniform at the time and present in the Courthouse to testify as a witness in three criminal cases – a role which he was undertaking only because of his position as a City of Pittsburgh police officer – the dispute with Plaintiff arose out of purely "familial and personal concerns." *Id.* Indeed, there is even less in the summary judgment record here to support a conclusion that Abel was acting under color of state law than in *Barna*, where the use of a police-issued nightstick was not "enough to color [a] clearly personal family dispute with the imprimatur of state authority." *Id.* In addition, like the officers in *Barna,* Abel never showed his badge, identified himself as a police officer, or attempted to place the Plaintiff under arrest. Nor did he in any way indicate that he was acting in his official capacity as an officer while the altercation was ongoing. To the contrary, Abel played no part in Plaintiff's arrest, as it is undisputed that Plaintiff was eventually taken into custody and questioned by Deputy Dobrosielski. Defs' Concise Stmt of Material Facts, at ¶ 35.

Despite the lack of evidence to demonstrate that Abel's actions were undertaken under color of state law, Plaintiff contends that summary judgment is not appropriate because the Defendants are collaterally estopped from arguing that Abel was not acting in his official capacity. According to Plaintiff, the issue of whether Abel was acting as a City of Pittsburgh
11

police officer when the subject incident occurred was previously litigated in Plaintiff's state criminal trial for aggravated assault on a police officer, as such charges necessarily suggest that Abel was acting under color of state law during the altercation. Thus, Plaintiff argues that in this action the City is bound by the decision of the Allegheny County District Attorney's ("DA") office to bring aggravated assault charges against Plaintiff. The Court does not agree.

The equitable doctrine of collateral estoppel precludes the relitigation of issues that have been decided in a prior lawsuit. *See In re Docteroff*, 133 F.3d 210, 214 (3d Cir. 1997). The doctrine generally applies if: "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; (3) the previous determination was necessary to the decision; and (4) the party being precluded from relitigating the issue was fully represented in the prior action." *Henglein v. Colt Industries Operating Corp.*, 260 F.3d 201, 209 (3d Cir. 2001) (internal citations omitted).

Plaintiff has not cited any cases that support his contention that the DA's decision on how to proceed in the criminal case against him amounts to a judicial determination for the purpose of collateral estoppel. Likewise, the Court's independent review of the relevant case law has not revealed any cases in support of that proposition.

However, assuming *arguendo* that the DA's decision does constitute a judicial determination, the Court finds that Plaintiff has still failed to establish the fourth requirement necessary for the application of the collateral estoppel doctrine, i.e. the requirement that privity existed between the City and the DA. The Court of Appeals for the Third Circuit has recognized six (6) circumstances in which a nonparty may be bound by the results of a prior litigation: "(1) the nonparty agrees to be bound by the determination of issues in an action between others; (2) a

substantive legal relationship – i.e. traditional privity – exists that binds the nonparty; (3) the nonparty was 'adequately represented by someone with the same interests who [wa]s a party'; (4) the nonparty assumes control over the litigation in which the judgment is rendered; (5) the nonparty attempts to bring suit as the designated representative of someone who was a party in the prior litigation; and, (6) the nonparty falls under a special statutory scheme that 'expressly foreclos[es] successive litigation by nonlitigants.'" *Nationwide v. Hamilton*, 571 F.3d 299, 312-13 (3d Cir. 2009) (quoting *Taylor v. Sturgell*, 533 U.S. 880, 893-94 (2008)). As the Defendants correctly point out, there is no evidence in the summary judgment record to indicate that any of those six (6) circumstances were present here.

Accordingly, for all the above stated reasons, summary judgment will be granted to Defendants on Plaintiff's federals claims against Abel.

B. <u>Municipal Liability Claim Against the City of Pittsburgh</u>

In addition to seeking to impose liability on Abel, Plaintiff also seeks to impose § 1983 liability on the City for its alleged failure to train, discipline, and supervise Abel. Plaintiff, in his effort to establish a causal connection between the City's actions and the subject alleged assault, has cited several investigative reports completed by the City's Office of Municipal Investigations ("OMI") pertaining to complaints filed against Abel, which relate to the use of excessive force in the performance of his police duties.

Because the Court has made a finding that there is no evidence that Abel was acting under color of state law when the alleged assault of Plaintiff took place, concomitantly there is no basis for municipal liability under §1983. Therefore, the City of Pittsburgh is entitled to summary judgment. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) (where there is

no underlying constitutional tort by individual police officers, there can be no liability on the municipality for its actions either).

C.     Remaining State Law Pendent Claims and Counterclaims for Assault and Battery

In addition to the federal constitutional claims addressed above, Plaintiff also brings state law claims of assault and battery against Abel in his individual capacity. Additionally, Abel has brought counterclaims of assault and battery against Plaintiff. The Court of Appeals for the Third Circuit has held that if the federal counts of a complaint are dismissed then the district court should "ordinarily refrain from exercising jurisdiction [over the state law claims] in the absence of extraordinary circumstances." *Tully v. Mott Supermarkets, Inc.,* 540 F.2d 187, 195-96 (3d Cir. 1976). *See also Borough of West Mifflin v. Lancaster*, 45 F.3d 780, 788 (3d Cir. 1995) ("Under *Gibbs* jurisprudence, where the claims over which the district court has original jurisdiction are dismissed before trial, the district court must decline to decide the pendent state claims unless considerations of judicial economy, convenience, and fairness to the parties provide an affirmative justification for doing so.")

Because the Court is granting summary judgment to Defendants on all of Plaintiff's federal claims, and given that there are no extraordinary circumstances which would warrant the exercise of supplemental jurisdiction over the pendent state law claims, the Court will decline to exercise supplemental jurisdiction. Plaintiff's claims for assault and battery, as well as Abel's claims for the same, will be dismissed without prejudice. *Angst v. Mack Trucks, Inc*., 969 F.2d 1530 (3d Cir. 1992) (once all federal claims have been dropped from the case, the case should either be dismissed or transferred to the Pennsylvania Court of Common Pleas pursuant to 42 Pa. Cons. Stat. Ann. § 5103(b)).

## Conclusion

For the reasons hereinabove set forth, summary judgment will be granted to Defendants on Plaintiff's federal claims and the remaining pendent state law claims will be dismissed without prejudice.

An appropriate Order follows.

McVerry, J.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| DESMOND THORNTON, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| | ) | 2:09-cv-0246 |
| vs. | ) | |
| | ) | |
| PAUL ABEL, individually and in his official capacity as a police officer for the City of Pittsburgh, and CITY OF PITTSBURGH | ) | |
| Defendants. | ) | |

## ORDER OF COURT

**AND NOW,** this 14th day of July, 2011, in accordance with the foregoing Memorandum Opinion, it is hereby **ORDERED, ADJUDGED AND DECREED** as follows:

1. The Motion for Summary Judgment filed by Defendants is **GRANTED** as to all federal claims alleged in Plaintiff's Complaint;

2. The Pennsylvania pendent state law claims against Abel in his individual capacity for assault and battery are **DISMISSED** without prejudice forthwith;

3. The Pennsylvania pendent state law counterclaims against Plaintiff for assault and battery are **DISMISSED** without prejudice forthwith; and

4. The Clerk shall docket this case closed.

BY THE COURT:

s/Terrence F. McVerry
United States District Court Judge

cc: Noah Geary, Esquire
Email: noahgeary@ngearylawoffices.net

Bryan Campbell, Esquire
Email: bryancmpbl@yahoo.com

Daniel D. Regan, Esquire
City of Pittsburgh Department of Law
Email: daniel.regan@city.pittsburgh.pa.us

Michael E. Kennedy, Esquire
City of Pittsburgh Department of Law
Email: michael.kennedy@city.pittsburgh.pa.us